IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CASINO T.,[1] | ) |
| *Plaintiff*, | ) |
| v. | ) Civil No. 3:22-cv-00808-MHL-SLS |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration,[2] | ) |
| *Defendant*. | ) |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff Casino T. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 10, 13.) The motions have been fully briefed (ECF Nos. 10, 11, 13), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Memorandum of Law in Support of a Social Security Disability Appeal (ECF No. 11) ("Pl.'s Mem.") at 10.) Plaintiff contends one issue necessitates

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

remand. (Pl.'s Mem. at 1, 5.) Specifically, she argues that the ALJ's decision is not supported by substantial evidence because he improperly evaluated the medical opinion of certified physician assistant Lorick Fox ("PA-C Fox"). (Pl.'s Mem. at 1, 7-10.) The Commissioner argues that the ALJ's decision should be affirmed because he followed the regulations when evaluating the persuasiveness of the medical opinion and substantial evidence supports his residual functional capacity ("RFC") assessment. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 13) ("Def.'s Mot.") at 12-16.)

For the reasons set forth below, this Court finds that the ALJ properly assessed the medical opinion of PA-C Fox in accordance with the regulations and that substantial evidence supports the ALJ's RFC findings. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and SSI on September 3, 2020, alleging disability beginning on December 1, 2019. (Administrative Record ("R.") at 71-73, 219, 232.)[3] At the time of her application date, Plaintiff was forty-two years old and had previously worked as a home health aide. (R. at 238, 254.) She alleged an inability to work due to back problems, high blood pressure, high cholesterol, obesity, anxiety, depression, asthma, heart problems, gastroesophageal reflux disease ("GERD"), and muscle spasms. (R. at 214, 232.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

The SSA denied Plaintiff's claims initially on February 23, 2021 (R. at 110, 114) and again upon reconsideration on August 20, 2021 (R. at 122, 127). Plaintiff requested a hearing before an ALJ, and one was held on March 4, 2022. (R. at 135-42, 157, 162.)

On March 18, 2022, the ALJ issued a written opinion, finding Plaintiff not disabled under the Social Security Act (the "Act"). (R. at 16-38.) Plaintiff requested review of the ALJ's decision. (R. at 197-99.) On October 26, 2022, the SSA Appeals Council denied Plaintiff's review request, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.   STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration

requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence

standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III. THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 16-27.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2019 (the alleged onset date). (R. at 21.) At step two, the ALJ determined that Plaintiff's morbid obesity, hypertension, degenerative disc disease, osteoarthritis, anxiety, depression, and asthma comprised severe impairments pursuant to 20 C.F.R. §§ 404.1520(c) and

5

416.920(c). (R. at 21.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.)

Between steps three and four, the ALJ determined Plaintiff's RFC. (R. at 22.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [Plaintiff] is able to lift, carry, push and pull 10 pounds occasionally and 5 pounds frequently; stand and/or walk two hours in an eight-hour workday. [Plaintiff] is able to occasionally climb ramps and stairs, but is never able to climb ladders, ropes and scaffolds; is occasionally able to balance, stoop, kneel, and crouch; and is unable to crawl. [Plaintiff] is unable to tolerate exposure to concentrated hazards such as unprotected heights or moving machinery and can occasionally tolerate exposure to concentrated respiratory irritants such as dust, odors, gasses and fumes. [Plaintiff] can occasionally perform overhead reaching with the bilateral upper extremities, occasionally push and pull with the bilateral upper extremities, and frequently reach, handle, finger, and feel.

(R. at 24.)[4] The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 24.)

Plaintiff reported being unable to work because she could not stand for long periods of time without breaks. (R. at 25.) "[H]er impairments affect her sleep in that she gets restless due to back pain and has to get out of bed and sit up sometimes to sleep." (R. at 25.) Plaintiff reported needing

---

[4] The RFC also included limitations pertaining to mental impairments. Plaintiff, however, challenges the ALJ's decision as it relates to the evaluation of a medical opinion addressing physical, rather than mental, limitations. Therefore, the Court similarly focuses its analysis on Plaintiff's physical impairments and resulting limitations.

to "get up from time to time while sitting due to leg pain." (R. at 25.) At the hearing, Plaintiff testified that:

> [S]he could walk for 30 minutes before being in pain and needing to sit and rest and she could stand about 10 minutes. She stated that she has to get up after about 10 minutes of sitting and that she has to go back and forth between sitting and standing. She stated that she could work at a job alternating between sitting and standing for about 2.5 hours and could not sustain an entire 8-hour workday because of back and hip pain.

(R. at 25.) Plaintiff further stated that she could put her socks and shoes on (although with difficultly), vacuum (but not the whole house without needing to take a break), and ride in a car (but may need to get out to rest her back and legs after about an hour). (R. at 25.)

The ALJ found Plaintiff's statements about "the intensity, persistence and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 26.) Specifically, the ALJ determined that "the overall evidence of record, including the objective findings and treatment history," supported the RFC findings. (R. at 26.) After summarizing the record evidence, including the consultative examination performed by PA-C Fox (R. at 26), the ALJ noted that "the objective diagnostic findings show mild to moderate, but not severe, degenerative changes of the lumbar spine, left hip, and bilateral knee changes" (R. at 28). Moreover, Plaintiff testified at the hearing "that her weight ha[d] decreased since the consultative examination and that she has had some improvement in her functioning due to her weight loss." (R. at 28.) Plaintiff could also engage in the following activities of daily living: personal care (although she needed to rest after showering); household chores (with breaks); washing dishes (while sitting); shopping in stores prior to May 2021 and online; driving (although she is able to drive, she does not because she does not own a car); managing finances; watching television; listening to music; doing word puzzles; and talking

7

on the phone. (R. at 29.) The ALJ determined that Plaintiff's "overall activities of daily living further support her ability to perform the work described in the [RFC] above." (R. at 29.)

The ALJ then "considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. at 24.) A state agency medical consultant who reviewed the record initially concluded that Plaintiff could perform light work with up to four hours of standing and/or walking and up to six hours of sitting in an eight-hour workday, could not climb ladders, ropes or scaffolds, could not crawl, could occasionally stoop, kneel, crouch, or climb ramps and stairs, and could frequently balance. (R. at 29-30.) A reviewing state agency medical consultant arrived at the same limitations with the added restriction of only occasional reaching. (R. at 30.) The ALJ found these opinions partially persuasive. (R. at 30.) He explained they were "supported by a narrative explanation with reference to objective findings . . . ." (R. at 30.) He found the postural limitations consistent with the overall objective findings and Plaintiff's treatment history but determined that Plaintiff's BMI, antalgic gait, and reports of low back and lower extremity pain warranted the additional exertional limitations imposed in the ALJ's RFC. (R. at 30.) The ALJ also imposed additional manipulative limitations to account for reports of decreased shoulder range of motion and intermittent hand numbness. (R. at 30.)

The ALJ then considered PA-C Fox's medical opinion. (R. at 30-31.) Following a consultative examination, PA-C Fox stated that Plaintiff could lift and carry up to 20 pounds occasionally, sit about two hours in an eight-hour workday provided she could change position and stand intermittently, stand and walk less than two hours in an eight-hour workday, frequently reach, handle, feel, and grasp bilaterally, and never bend, stoop, kneel, or squat. (R. at 30.) The

8

ALJ found this opinion "generally unpersuasive." (R. at 30.) After summarizing the consultative examination (R. at 26) and PA-C Fox's opinion (R. at 30), the ALJ explained:

> PA-C Fox did not offer a detailed explanation in support of the limitations []he assessed. Further, the limitations are not consistent with the findings showing that despite some gait deficits, [Plaintiff] ambulates without an assistive device, and that she has had no lasting deficits of strength, sensation, or respiratory deficits despite her BMI and blood pressure. The limitations are also generally not consistent with [Plaintiff's] treatment history including medication managed by her primary care provider and arthrocentesis on her knees recently but no physical therapy or surgery or management by other specialists or repeated emergency room visits for any uncontrolled symptoms or complications. They are also not consistent with [Plaintiff's] activities of daily living including being able to perform at least some vacuuming and other household chores, driving, and personal care . . . .

(R. at 30-31.)

At step four, the ALJ found that Plaintiff had no past relevant work.[5] (R. at 31.) Based on the RFC findings, the ALJ considered whether Plaintiff could make "a successful adjustment to other work." (R. at 32.) Because Plaintiff did not have past relevant work, the ALJ considered at step five the testimony of a VE, who opined that an individual with Plaintiff's RFC could perform the requirements of other work available in significant national numbers. (R. at 32.) Specifically, the ALJ found that Plaintiff could perform work as a final assembler or dowel inspector. (R. at 32.) Therefore, the ALJ ultimately determined that Plaintiff was not disabled under the Act. (R. at 32.)

## IV. ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In

---

[5] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1565(a), 416.960(b)(1).

reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and substantial evidence supports the ALJ's RFC findings.

### A. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. This framework applies in Plaintiff's case. (*See* Pl.'s Mem. at 6.) The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

10

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id.* §§ 404.1520c, 416.920c(b)-(c). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

### B. PA-C Fox's Medical Opinion

PA-C Fox opined on Plaintiff's ability to engage in work-related activities in a Medical Consultant Report. (R. at 343-50.) Plaintiff met with PA-C Fox on February 6, 2021 for a physical consultation. (R. at 343.) At this appointment, Plaintiff measured 5'4" in height and weighed 401 pounds. (R. at 345.) Her blood pressure was 173/100, but PA-C Fox indicated that the reading may have been inaccurate, as it came from Plaintiff's lower arm due to the cuff being too small. (R. at 345.)

Plaintiff provided PA-C Fox with her medical history, stating that she previously worked as a home health aide but stopped due to her low back pain and radiculopathy. (R. at 343.) Because of this pain, Plaintiff reported that she "c[ould] walk 150 feet [at a time] on a good day" but required a short break before she could continue to walk. (R. at 343.) While Plaintiff noted that she could stand for ten to fifteen minutes at a time, she indicated that she could only sit for about thirty minutes, when pain stiffens her back and numbs her lower extremities. (R. at 343.) Plaintiff told PA-C Fox that she could dress and eat by herself, could sometimes bath herself unless her back was "really tight," and could not cook, clean, vacuum, or wash dishes because of back pain associated with standing or bending. (R. at 343-44.)

During her visit with PA-C Fox, Plaintiff independently stood up and walked to the exam room and independently transferred to the exam table. (R. at 345.) PA-C Fox noted that Plaintiff sat "comfortably during the exam and appear[ed] cooperative and spontaneous." (R. at 345.) Plaintiff independently removed her shoes and socks but PA-C Fox observed difficultly and shortness of breath. (R. at 345.)

PA-C Fox limited his exams evaluating Plaintiff's gait and station because he was concerned that Plaintiff might fall. (R. at 346.) However, PA-C Fox noted that Plaintiff had a normal base of support, could walk on her heels and toes, did not use an assistive device, and could also stand independently on each of her legs. (R. at 346.) Plaintiff could not perform tandem walk. (R. at 346.)

PA-C Fox further noted that Plaintiff's "paravertebral muscles" were tender "from the inferior portion of the thoracic spine . . . to the sacroiliac joints" (the joints that link the pelvis and lower spine) and that there was a "probable spasm over the lumbar sacral paravertebral musculature." (R. at 348.) In addition, Plaintiff had tender sacroiliac joints on both sides, had a

12

positive straight leg raise on her left side, and a negative straight leg raise on her right side. (R. at 348.)

After reviewing records, Plaintiff's history, and conducting the physical exam, PA-C Fox assessed Plaintiff's exertional limits for work-related activities in a Functional Assessment and Medical Source Statement. (R. at 349.) PA-C Fox concluded that Plaintiff could engage in some work-related activities. (R. at 349.) PA-C Fox noted that Plaintiff may occasionally lift and carry up to twenty pounds. (R. at 349.) Further, PA-C Fox found that Plaintiff could stand and walk for less than two hours and sit for about two hours, so long as Plaintiff was permitted to change position and stand intermittently. (R. at 349.) PA-C Fox opined that Plaintiff could frequently reach, handle, feel, and grasp, but could never bend, stoop, kneel, or squat. (R. at 349.)

### C. The ALJ Applied Correct Legal Standards in Evaluating PA-C Fox's Opinion and Substantial Evidence Supports the ALJ's Determinations

In her one assignment of error, Plaintiff contends that the ALJ improperly evaluated the opinion evidence of PA-C Fox. (Pl.'s Mem. at 1.) Specifically, Plaintiff contends that the ALJ: (1) inaccurately found that PA-C Fox did not offer a detailed explanation to support the assessed limitations (Pl.'s Mem. at 8-9); (2) wrongly rejected PA-C Fox's two-hour per workday limitation on sitting with the opportunity to change positions and stand intermittently and adopted the non-examining state agency opinions imposing a six-hour per workday limitation on sitting. (Pl.'s Mem. at 9); and (3) failed to consider Plaintiff's severe obesity which she contends further supported PA-C Fox's limitations (Pl.'s Mem. at 10.) The Court addresses each argument below and finds no reversible error in the ALJ's findings.

Plaintiff first argues that the ALJ erred in finding that PA-C Fox's opinion lacked a detailed explanation supporting the recommended limitations. (Pl.'s Mem. at 7-8.) Plaintiff characterizes this finding as "inaccurate," arguing that support for PA-C Fox's limitations can be gleaned from

13

"any objective look at PA-C Fox's opinion, and overall consultative report." (Pl.'s Mem. at 8.) The Court finds that the ALJ did not err in assessing the supportability factor regarding PA-C Fox's opinion. Specifically, the ALJ stated that "PA-C Fox did not offer a detailed explanation in support" of the assessed limitations. (R. at 30.) A review of the overall consultative report supports the ALJ's finding. Specifically, the report contained the following notations, among others: (1) Plaintiff reported being able to stand for ten to fifteen minutes at a time and sit for about thirty minutes (R. at 343); (2) Plaintiff reported being able to dress and eat by herself, could sometimes bath herself, and could not cook, clean, vacuum, or wash dishes (R. at 343-44); (3) Plaintiff independently stood up and walked to the exam room and independently transferred to the exam table (R. at 345); (4) Plaintiff sat "comfortably during the exam and appear[ed] cooperative and spontaneous" (R. at 345); (5) Plaintiff independently removed her shoes and socks but with observed difficultly and shortness of breath (R. at 345); (6) Plaintiff had a normal base of support, could walk on her heels and toes, did not use an assistive device, and could also stand independently on each of her legs, but could not perform tandem walk (R. at 346); and (7) Plaintiff had tender "paravertebral muscles" "from the inferior portion of the thoracic spine . . . to the sacroiliac joints," a positive straight leg raise on her left side, and a negative straight leg raise on her right side (R. at 348). Despite these and other notations in the report, PA-C Fox failed to explain or provide support for how he arrived at a two-hour limitation on sitting (R. at 349), as opposed to the 30-minute limitation reported by Plaintiff or the six-hour limitation eventually found by the ALJ. The ALJ did not err by considering the lack of explanation in connection with the supportability assessment.

Plaintiff next challenges the ALJ's adoption of the six-hour per workday limitation on sitting as recommended by the non-examining state agency opinions over the two-hour per

workday limitation on sitting with a sit-stand option as recommended by PA-C Fox. (Pl.'s Mem. at 9.) The Court finds that the ALJ satisfied the regulations when he found PA-C Fox's opinion "generally unpersuasive," and that substantial evidence supports the ALJ's determinations. (R. at 30.) In his decision, the ALJ properly identified how PA-C Fox's opinion was not supported and not consistent with the medical evidence. The Court already addressed the supportability assessment above.

Regarding consistency, the ALJ found that PA-C Fox's opinion was generally not consistent with Plaintiff's physical examination findings, treatment record, or subjective description of daily living. (R. at 30–31.) The ALJ noted that despite Plaintiff's clinical findings of gait deficits and elevated BMI and blood pressure measurements, she could move independently without using an assistive device and did not suffer from any permanent deficits of strength, sensation, or respiratory capacity. (R. at 31.) Further, the ALJ considered the limitations asserted by PA-C Fox alongside Plaintiff's medical treatment history as one factor in her analysis. Although Plaintiff takes prescription medication and underwent arthrocentesis on both of her knees, the record did not show engagement in physical therapy, surgery, or management by other specialists, nor did it reveal consistent emergency room visits relating to her claimed ailments. (R. at 31.) Ultimately, throughout his decision, the ALJ: (1) carefully and thoroughly summarized Plaintiff's medical treatment history (R. at 25-29); (2) acknowledged the objective medical findings, concluding that "the objective diagnostic findings show mild to moderate, but not severe, degenerative changes of the lumbar spine, left hip, and bilateral knee changes," "examinations have shown a BMI above 60 and blood pressure above the normal range," and Plaintiff had exhibited some gait deficits but had not required the use of an assistive device to walk (R. at 28); and (3) considered Plaintiff's subjective statements, including those made to her medical providers

15

at appointments, during her hearing, and on submitted documents (R. at 25-29). Based on this substantial evidence, the Court finds that the ALJ did not err in finding PA-C Fox's opinion inconsistent with medical findings, treatment history, and reported activities of daily living.

Substantial evidence also supports the ALJ's finding of PA-C Fox's opinion as generally unpersuasive, while finding the non-examining state agency medical consultants' opinions partially persuasive. The state agency medical consultants separately rejected PA-C Fox's medical opinion as unpersuasive because it "relie[d] heavily on the subjective report of symptoms and limitations provided by [Plaintiff]." (R. at 77, 84, 93, 101.) They further found that "the totality of the evidence does not support [PA-C Fox's] opinion." (R. at 77, 84, 93, 101.) As an initial matter, the Court notes apparent discrepancies regarding Plaintiff's reported daily activities as described to PA-C Fox versus in other portions of record. (*Compare* R. at 343 (reporting to PA-C Fox that she struggled with bathing sometimes because of back tightness and could not cook, clean, vacuum, or do dishes because of back pain with bending or standing) *with* R. at 25, 29 (noting Plaintiff's reports that she could perform household chores with breaks, vacuum (but not the whole house without needing to take a break), wash dishes while sitting down, and perform personal care except needing to rest after showering and that she did not prepare meals because her friend cooks all the time).) In any event, the ALJ properly assessed the opinion evidence, including their supportability and consistency, in accordance with applicable regulations (R. at 29-31) and cited substantial evidence supporting his conclusions. The Court therefore declines to disturb the ALJ's assessment.

Plaintiff also contends that the ALJ failed to account for Plaintiff's severe obesity which supported the limitations in PA-C Fox's opinion. To the contrary, the decision shows the ALJ thoroughly considered Plaintiff's severe impairment of morbid obesity, including its symptoms

16

and the impact it has on Plaintiff's ability to work. (R. at 21, 24-28.) Moreover, in considering the non-examining state agency medical consultants' opinions, the ALJ found additional exertional limitations appropriate to account for Plaintiff's obesity. (R. at 30.) And in considering PA-C Fox's opinion, the ALJ found the extreme limitations recommended by PA-C Fox not warranted despite Plaintiff's obesity. (R. at 31.) Substantial evidence again supports the ALJ's findings.

While Plaintiff may disagree with the way in which the ALJ weighed the medical opinion, it is not this Court's role to re-weigh conflicting opinions or substitute its judgment for that of the ALJ. *See Craig*, 76 F.3d at 589 (explaining that where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence and resolve conflicts). Here, the ALJ sufficiently articulated how he considered the supportability and consistency of the medical opinion and why—based on the evidence—he reached the conclusion that PA-C Fox's medical opinion was generally unpersuasive. Therefore, the Court finds no error. *See Hendrix v. Astrue*, No. 1:09-CV-01283-HFF, 2010 WL 3448624, at *2 (D.S.C. Sept. 1, 2010) (citing *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999)) (noting that an "ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion").

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge M. Hannah Lauck and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: January 17, 2024